# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

PATRICK NOEL                                                                                    PLAINTIFF

v.                                                              CIVIL ACTION NO. 3:12CV-P296-S

DR. SIJIA LIU et al.                                                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court are the summary-judgment motions filed by Defendants Ruth Brekken and Roy Washington (DN 38) and Defendant Sijia Liu (DN 42). For the following reasons, those motions will be granted.

## I. FACTS

Plaintiff is currently an inmate at the Luther Luckett Correctional Complex (LLCC). Previously, he was housed at the Roederer Correctional Complex (RCC). He sued in their individual and official capacities Dr. Sijia Liu, Kentucky State Reformatory (KSR) optometrist; Roy Washington, RCC ARPN; and Ruth Brekken, RCC LPN.[1]

Plaintiff alleged that in August 2011, while housed at RCC, he filled out a sick-call slip requesting medical attention for his right eye. He stated that RCC "medical" indicated that he would be seen by an eye doctor. After several more days, he was taken to KSR's eye clinic, was given some eye ointment, and told he had an eye infection. He alleged that, starting on August 29, 2011, RCC medical staff applied the ointment to both his eyes when it had been prescribed for only one eye. He alleged that on or about September 6, 2011, he "experienced a big massive flash of light in [his] left eye." He went to "medical" and the nurse said that she did not know what that meant but she stopped the use of the ointment. He stated that he was taken to the eye doctor the

---

[1] Other Defendants were dismissed on initial review or by grant of motion to dismiss.

next day. While at the KSR eye clinic, KSR staff arranged to have him taken to the Bennett & Bloom Eye Center (BBEC) within one and one-half hours, where he was scheduled for eye surgery the following Tuesday. He stated that he has lost all sight in his left eye because Defendants prescribed him the wrong medication and applied it incorrectly. He also alleged that he will lose sight in his right eye if prompt treatment is not provided.

On initial review, the Court allowed the Eighth Amendment claims against Defendants Liu, Washington, and Brekken in their individual capacities for monetary damages to go forward. The Court also allowed the claim against Defendants Liu in her official capacity for injunctive relief to go forward.

The facts which are not in dispute are that Plaintiff sought treatment and was taken to the KSR eye clinic, where he saw Defendant Liu. Defendant Liu diagnosed an infection and prescribed medication. That medication was administered to both of Plaintiff's eyes. Defendants do not dispute that Plaintiff on or about September 6, 2011, "experienced a big massive flash of light in [his] left eye." It is also undisputed that Plaintiff has suffered a retinal detachment in his left eye, which required surgery.

## II. ANALYSIS

*Summary judgment standard*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of

evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id*. If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc*., 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted).

*Summary-judgment motion filed by Defendants Brekken and Washington (DN 38)*

Defendants Brekken and Washington, both nurses at RCC, argue that they were not deliberately indifferent to a serious medical need as there is no objective manifestation of subjective intent of deliberate indifference. They further argue that Plaintiff's disagreement regarding the treatment he was given does not rise to a constitutional claim. They also argue that Plaintiff failed to exhaust his administrative remedies. They attach Kentucky Department of Corrections (KDOC) medical records relating to Plaintiff's treatment for his eyes. Those records show that on August

3

24, 2011, Plaintiff requested to see an eye doctor and was told that he would be added to the waiting list for the eye clinic. On August 28, 2011, Plaintiff again requested to see the eye doctor, stating: "My eyes hurt since I got blood in them and dry all the time. Need to see the doctor." The response was that he was already on the waiting list to go to the eye clinic. On September 5, 2011, Plaintiff went to the KSR eye clinic, with Defendant Brekken listed as the referring medical personnel. The reason for the consultation was listed as "eye pain." The optometry notes state that Dr. Liu diagnosed blepharitis[2] and prescribed Bacitracin ointment to be applied to both eyes for fourteen days.

      The exhibits further reveal that on September 13, 2011, Plaintiff again requested to see the eye doctor. He stated, "My med make my eye hot." The response was that the eye doctor would be contacted to see what the doctor advised. On September 17, 2011, Plaintiff presented to medical complaining of no vision in his left eye. He was instructed to put a sick-call slip into the eye doctor and was given a patch to wear to "avoid extra strain on affected eye." The next day, he presented to medical complaining of losing vision in his right eye. He was seen again on September 19, 2011. The note for that visit, signed by Defendant Brekken, states that Plaintiff informed her that "he has no vision in the right eye and that he is having pain in and around the right eye. I have referred him back to the eye clinic. He wants to keep a patch over the eye as that is helping. He stopped the bacitracin ointment 4 days ago as he thought that was the cause." That same day, Plaintiff was taken to the KSR eye clinic, where he was again seen by Defendant Liu. She made the following assessment:

---

[2] The memorandum in support of Defendant Liu's motion for summary judgment explains that blepharitis is an infection of the eyelid.

>*Diagnosis*: Full thickness Retinal Detachment OS[3], Vitreous Floaters OD[4]
>*Consultation requested*: Bennett & Bloom Eye Center
>*Reason for consultation*: Full thickness retinal detachment OS need retinal surgery STAT. Evaluate vitreous floaters OD.

The medical records show that Plaintiff was examined at the BBEC on the same day, September 19, 2011. Dr. Singal at BBEC diagnosed Plaintiff with a "macula-off detachment with vitreous hemorrhage in the left eye." Surgery was scheduled for September 22, 2011. However, on that date, the eye surgery was canceled due to "abnormal findings prior to surgery."

Plaintiff was seen by Dr. Singal for a follow-up appointment on October 11, 2011. Also on that date, Plaintiff filled out a request to see an eye doctor, stating "I want a second opinion on my eye." The response was that a second opinion would be at his expense. The next day, Plaintiff filled out a request to see staff because his left eye was "having real bad pain." The response was that he would be having a follow-up appointment with the eye doctor soon. On October 14, 2011, Plaintiff was taken to the KSR eye clinic, which recommended a stat consult with BBEC. However, KDOC notes show that, because there was no doctor available at BBEC that day, Plaintiff was sent by car to the University of Louisville ER for further evaluation "per verbal order of" Defendant Washington. At the University of Louisville ER, Dr. Schwartz diagnosed Plaintiff with a retinal detachment in his left eye and decreased vision in his right eye and requested an urgent consultation with the University of Louisville Lions Eye Center on October 17, 2011, for further evaluation. An addendum note of that date states that the consult was changed per Defendant Washington for

---

[3] Dr. Liu's memorandum explains that "OS" is Latin for "left eye" (ocular sinister).

[4] Dr. Liu's memorandum explains that "OD" is Latin for "right eye" (ocular dexter).

Plaintiff to see "BBEC/Dr. Singal rather than start the procedure all over at [the Lions Eye Center]. Dr. Singal was unable to see inmate on 10/14/11 because he was in Jeffersonville, IN so [Plaintiff] had to go U of L ER that date. Dr. Singal has seen the patient three times previously. Surgery has been scheduled for 10/24/11 . . . by Dr. Singal."

A letter from Dr. Singal to Dr. Schwartz on October 17, 2011, explains that Dr. Singal had originally seen Plaintiff about three weeks prior with a detachment of left eye. Dr. Singal continued:

> I had him scheduled him for vitrectomy. He was scheduled on 09/19/11. Before the surgery, I looked in the back of his eye. Interestingly, the detachment seemed to be resolved. Although the view was hazy. He had choroidals 360 degrees. I abandoned the procedure at that time.
> There are case reports where due to low eye pressure secondary to detachment, patients developed choroidal detachments which acted as a buckle and led to improvement in detachment. Our goal was to go ahead and do laser 360 degrees as the detachment was acting as a buckle. Unfortunately, although the choroidals stayed the same, his detachment got worse.
> Henceforth, I planned on operating on him today, bu since he could not come on Friday for evaluation, we had to postpone that. I will try to schedule his left eye virectomy very soon.

On October 24, 2011, Dr. Bloom, Dr. Singal's partner, performed surgery on Plaintiff's left eye. Defendant Washington made a consultation request for a one-week post-surgery appointment on November 1, 2011. On November 3, 2011, Defendant Washington made a consultation request for another follow-up appointment in another five weeks, as directed by Dr. Singal. Plaintiff was transferred to LLCC on November 16, 2011, and henceforth was no longer under the care of Defendants Brekken and Washington.

*Summary-judgment motion of Defendant Liu (DN 42)*

Defendant Liu explains that during the time in question she was an optometrist at KSR and

6

had two encounters with Plaintiff regarding complaints of eye pain while he was housed at RCC. She argues that Plaintiff has not shown that she was deliberately indifferent to his care. She argues that on September 5, 2011, Plaintiff presented complaining that his eyes felt dry. She asserts that she diagnosed him with blepharitis and prescribed an appropriate eye ointment. She further asserts that when Plaintiff appeared on September 19, 2011, with an emergent eye condition, she timely diagnosed a retinal detachment and immediately referred him for evaluation and treatment by the appropriate specialist. She states that the loss of sight in his left eye was caused by a retinal detachment unrelated to the antibiotic ointment he had been prescribed. She argues that Plaintiff received treatment from her and she did not ignore an obvious need for medical treatment. She further asserts that there is no evidence that she had any role in his medical care outside of his visits to KSR on September 5 and 19, 2011. She also asserts that Plaintiff failed to exhaust his administrative remedies.

*Plaintiff's responses*

Plaintiff did not file a response to the motion for summary judgment filed by Defendants Brekken and Washington, although the Court expanded the time to do so in an Order entered March 25, 2013. In that Order, the Court noted that though Plaintiff had not responded, shortly after that motion was filed, Plaintiff filed his pretrial memorandum. The Court will consider Plaintiff's pretrial memorandum and exhibits thereto in conjunction with its consideration of the summary-judgment motions. That pretrial memorandum contains Plaintiff's argument as to the cause of the detached retina. Plaintiff asserts that according to the papers that came with the ointment prescribed by Defendant Liu is a statement that a possible side effect is that the ointment "could cause an <u>overgrowth of nonsusceptible organisms particularly fungi</u>." He continues:

7

> Now it doesn't take a rocket scientist to figure out that overgrowth
> and massive swelling are one in the same. And that is exactly what
> had happened to my eye. I eventually learned that the cornea had
> swelled and busted. That was the flash I saw. The pain I experienced
> was due to the busted cornea having caused my retina in that eye to
> come loose.

He asserts that tests should have been done, which would have revealed that he had a staph infection and never should have been given the Bacitracin ointment.

Among the attachments to the pretrial memorandum is what appears to be the medication insert which would have accompanied the medicine, Bacitracin Ophthalmic Ointment USP Sterile. Under the heading "Action," it states: "The antibiotic, Bacitracin, exerts a profound action against many gram-positive pathogens, including the common Streptococci and Staphylococci. It is also destructive for certain gram-negative organisms. It is ineffective against fungi." Under the heading "Precautions," it states: "Bacitracin ophthalmic ointment should not be used in deep-seated ocular infections or in those that are likely to become systemic. The prolonged use of antibiotic containing preparations may result in overgrowth of nonsusceptible organisms particularly fungi. If new infections develop during treatment appropriate antibiotic or chemotherapy should be instituted."

Plaintiff did file a response (DN 48) to Defendant Liu's summary-judgment motion. That response takes issue with Defendant Liu's statement that she had no control over anyone named in the complaint. Plaintiff asserts that Defendant Liu "can order that a client be transported for further evaluation or treatment and they will be transported." He argues that on September 5, 2011, Defendant Liu diagnosed him with retinal degeneration and within 14 days his retina had become completely detached. Further, he points out that, two days after his last visit with Defendant Liu, he lost his eyesight. He explains that he has no money to pay for a second opinion from another eye specialist. He also argues that he was diagnosed with a staph infection and Defendant Liu "showed a

8

deliberate indifference to his medical needs by ordering an ointment that was not to be used on staph infections." He attaches no exhibits.

*Administrative exhaustion*

Pursuant to 42 U.S.C. § 1997e(c)(2), "In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." "The Court may also deny an unexhausted claim on the merits . . . in the context of a summary judgment motion as well." *Casanova v. Mich. Dep't of Corr.*, No. 10-13950, 2012 WL 4470637, at *6 n.4 (E.D. Mich. Aug. 31, 2012) (listing cases). Because the Court finds that Plaintiff fails to state a claim upon which relief can be granted, the Court does not consider whether Plaintiff failed to exhaust.

*Eighth Amendment*

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). A prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to

9

constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In other words, a court generally will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Thus, a difference in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment is not enough to state a deliberate-indifference claim. *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). "The question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment. At most, a medical decision not to order an x-ray or like measures represents medical malpractice." *Rouse v. Hiland*, 5:08CV-P186-R, 2010 WL 2305492, at *3 (W.D. Ky. June 7, 2010) (citing *Estelle*, 429 U.S. at 107).

Plaintiff's complaint was verified, *i.e.*, Plaintiff certified under penalty of perjury that the contents of the complaint were "true and correct." Statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, here, all of the statements in Plaintiff's complaint regarding the cause of his blindness in his left eye, *i.e.*, that he was prescribed the wrong medication and that it should not have been applied to his left eye, are merely Plaintiff's conclusions. As such, they are not sufficient to raise a genuine issue of triable fact. FED. R. CIV. P. 56(c)(4) (affidavits opposing summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Weberg*, 229 F.3d at 526 n.13. "The non-moving party cannot rely on conclusory allegations to counter a motion for summary judgment." *Nix v. O'Malley*, 160 F.3d

10

343, 347 (6th Cir. 1998) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990)); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990)).

Nor do any of the attachments to Plaintiff's pretrial memorandum establish an Eighth Amendment violation. In his pretrial memorandum, Plaintiff sets forth his theory that tests should have been done, which would have revealed that he had a staph infection and, according to Plaintiff, never should have been given the Bacitracin ointment. He postulates that an overgrowth of fungi caused massive swelling, which in turn caused his cornea to "swell[] and bust[] . . . caus[ing] my retina in that eye to come loose." Although as Defendant Liu points out in her summary-judgment motion, there is no diagnosis of a "staph infection" (which she explains, she is assuming to be an allegation of a staphylococcus infection), in fact the medication insert clearly states that Bacitracin is effective against staph infections. It is also clear from attachments to Plaintiff's pretrial memorandum that Defendant Liu had diagnosed blepharitis in both eyes and had prescribed Bacitracin Ophthalmic for both eyes. Thus, his allegation that Defendants Brekken and Washington should not have administered the medication to both eyes is unfounded. The record simply does not support Plaintiff's theory of what caused the loss of sight in his left eye.

Plaintiff, at most, has shown that he disagrees with the diagnosis and treatment of his eye condition. Such disagreement does not rise to the level of a constitutional violation. *See Ward*, 1996 WL 627724, at *1. And the record clearly shows that Plaintiff did receive treatment for his eyes, including several appointments to see outside experts and surgery. Defendants Brekken and Washington scheduled multiple appointments to see eye specialists. The medicine prescribed by Defendant Liu was appropriately applied to both of Plaintiff's eyes. And Plaintiff has not presented any evidence that Bacitracin as prescribed by Defendant Liu was not an appropriate medication.

Moreover, as Dr. Liu pointed out, when Plaintiff presented on September 19, 2011, with a detached retina she correctly diagnosed that condition and immediately referred him for emergency treatment. Plaintiff has failed to produce evidence sufficient to require submission of the issue to a jury. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Defendant Brekken's and Washington's and Defendant Liu's motions for summary judgment (DNs 38 and 42) are **GRANTED**. **IT IS ORDERED** that Plaintiff's claims against Defendants Brekken, Washington, and Liu are **DISMISSED**.

Date: August 26, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc: Plaintiff, *pro se*
 Counsel of record
4411.009